IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**LEE CLAYTON**                                                                                               **PLAINTIFF**

V.                              **CASE NO.: 3:15CV00141-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                                   **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Lee Ann Clayton[1] has appealed the final decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits and supplemental security income. Both parties have submitted appeal briefs, and the case is ready for decision.[2]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Papesh v. Colvin*, 786 F.3d 1126, 1131(8th Cir. 2015); see also 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). In assessing the

---

[1]Ms. Clayton was formerly known as Lee Ann Whitt.

[2]The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

substantiality of the evidence, the Court has considered evidence that detracts from the Commissioner's decision as well as evidence that supports it.

Ms. Clayton alleged that she became limited in her ability to work due to high blood pressure, heart disease, and shoulder problems. (SSA record at 231) After conducting a hearing, the Administrative Law Judge[3] ("ALJ") concluded that Ms. Clayton had not been under a disability within the meaning of the Social Security Act at any time from September 1, 2010, her alleged onset date, through January 30, 2014, the date of his decision. (*Id*. at 103) On April 30, 2015, the Appeals Council denied the request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (*Id*. at 1-6) Ms. Clayton then filed her complaint initiating this appeal. (Docket #2)

At the time of the hearing, Ms. Clayton was 38 years old and lived with her husband, her two children, and her husband's son. (SSA record at 112, 117) She had a high school education and past relevant work as an electric motor assembler, fork lift driver/operator, and general plastics laborer. (*Id*. at 112, 132)

The ALJ found that Ms. Clayton had not engaged in substantial gainful activity since her alleged onset date. (*Id*. at 94) He noted, however, that Ms. Clayton had performed some work that did not reach the level of substantial gainful activity and had also collected unemployment insurance during the period at issue. (*Id*.)

---

[3]The Honorable Kevin T. Alexander.

The ALJ found that Ms. Clayton had the following "severe" impairments: morbid obesity, congestive heart failure, lower back pain, and depression. (*Id*. at 95) He further found that Ms. Clayton did not have an impairment or combination of impairments that met or equaled a Listing. (*Id*. at 95-97) He judged that Ms. Clayton's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not totally credible. (*Id*. at 97-101)

Based on his findings, the ALJ concluded that during the relevant time period, Ms. Clayton retained the residual functional capacity ("RFC") for a limited range of light work. Specifically, the ALJ restricted Ms. Clayton from climbing ladders, ropes, and scaffolds, but found she could occasionally perform other postural activities. She was restricted from concentrated exposure to heat, cold, and fumes. She was capable of work where interpersonal contact is incidental to the work performed; the complexity of one to two step tasks is learned and performed by rote, with few variables and little judgment; and the supervision required is simple, direct, and concrete. The work must be limited to Specific Vocational Preparation (SVP) level of 1 or 2– jobs that can be learned within 30 days. (*Id*. at 97)

Based on testimony from a vocational expert, the ALJ concluded that Ms. Clayton could not perform her past relevant work, but that she could perform other jobs available

in the national economy.[4]  (*Id*. at 101)  Thus, the ALJ concluded that Ms. Clayton was not disabled.  (*Id*. at 102)

**Development of the Record**

Ms. Clayton complains that the ALJ's assessment that she was capable of a limited range of light work is not supported by substantial evidence, because the record did not contain a functional capacity assessment or the opinion of any treating or examining physician.  (#11 at p. 12)  More specifically, Ms. Clayton complains that the ALJ should have obtained an opinion regarding her work-related mental limitations.  (#11 at p. 14)

An ALJ has a duty to re-contact a treating source only when the evidence is inadequate to determine disability.  20 C.F.R. § 404.1512(e).  In order to meet the heavy burden of showing the record has been inadequately developed, Ms. Clayton must show both a failure to develop necessary evidence and unfairness or prejudice from that failure. *Combs v. Astrue*, 243 Fed.Appx. 200, 204 (8th Cir. 2007).  Ms. Clayton has not met her burden.

Here, the record as to Ms. Clayton's physical impairments was fully developed.[5]  The ALJ had records from Ms. Clayton's treating sources, reports of diagnostic tests, as well as her hearing testimony and the opinions of the State agency physicians.

---

[4]The ALJ found Ms. Clayton could perform the jobs of motel housekeeper and rental clerk.  (*Id*. at 102)

[5]Ms. Clayton's attorney did not request that she be sent for a consultative examination, and she did not offer an assessment from her treating sources.

Cardiologist Miximiliano Arroyo treated Ms. Clayton's congestive heart failure, which was controlled with medication. (SSA record at 455-57, 459-62, 468-73, 75-77) An echocardiogram of Ms. Clayton performed in January, 2012, revealed mild concentric left ventricular hypotrophy, an ejection fracture estimate of 60-65% and mild mitral regurgitation. (*Id*. at 483-84) Cardiologist Al Hindi, M.D., ordered an EKG of Ms. Clayton on July 6, 2012, which revealed normal sinus rhythm. (*Id*. at 543-48) An exercise stress echocardiogram was performed later in the month. Ms. Clayton achieved 73% of the maximum predicted heart rate and the study was noted to be normal. (*Id*. at 564-66)

Treatment notes of Shahid Shah, M.D., Ms. Clayton's primary care physician, indicated that her back pain, hyperlipidemia, congestive heart failure, and diabetes mellitus were controlled by medication. (*Id*. at 497-99, 503, 505-07, 512-14, 596-97, 600-07, 608-10, 622-30, 636-32, 647-51)

The ALJ also considered the opinions of agency physicians David Hicks, M.D., and David Neals, M.D., who opined that Ms. Clayton was capable of light work. (*Id*. 573-80, 620) The ALJ gave these opinions partial weight and added exertional and environmental limitations to Ms. Clayton's residual functional capacity based on other evidence in the record. (*Id*. at 100)

The ALJ must determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the

claimant's own descriptions of her limitations. *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). To evaluate Ms. Clayton's credibility, the ALJ followed the required two-step process and considered the required factors.[6] (SSA record at 97-101) See *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p (July 2, 1996).

The ALJ discounted Ms. Clayton's complaints of pain because they were inconsistent with the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001); *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ considered Ms. Clayton's activities of daily living, including driving, tending to personal hygiene, cooking, doing laundry and dishes, cleaning with rest breaks, going out alone, shopping for necessities, and caring for her children. (*Id*. at 95, 99-100, 117-19, 250-53) As the ALJ noted, at times Ms. Clayton did not seek treatment. The treatment Ms. Clayton did receive was conservative and was generally successful in controlling her symptoms. (*Id*. at 100) The ALJ had good reasons for discounting Ms. Clayton's allegations. *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).

---

[6]In considering the credibility of a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).

After considering all of the evidence in the record, there is substantial evidence to support the ALJ's physical residual functional capacity assessment.

Ms. Clayton also complains that the ALJ failed to fully develop the record regarding her depression. Juan B. Cazano, M.D., examined Ms. Clayton in April, 2012. (*Id*. at 497-99)  He noted in his review of systems that she had no anxiety or depression. (*Id*. at 498)  On examination, he noted that Ms. Clayton had good eye contact, normal speech, and appropriate mood and affect. (*Id*.)  He started Ms. Clayton on Doxepin for a skin rash. (*Id*.)

In May, 2012, Ms. Clayton was examined by Shahid Shah, M.D.  She reported that the medication was helping and asked for a refill. (*Id*. at 608)  Dr. Shah assessed depressive disorder and refilled her medication. (*Id*. at 609-10)

During a visit to Dr. Arroyo in July, 2012, Ms. Clayton did not complain of depression. (*Id*. at 547)  In August and November of 2012, Ms. Clayton reported to Dr. Shah that the Doxepin was helping, and she asked him to increase her dosage. (*Id*. at 600-603, 627-30) Dr. Shah increased her dosage on both visits. (*Id*.)

From November of 2012, until April of 2013, there are no records indicating that Ms. Clayton sought treatment from Dr. Shah. In April of 2013, she reported that she had stopped taking Doxepin because it caused her to have strange dreams. She asked to be placed on a new medication. (*Id*. at 622-26) Dr. Shah prescribed Prozac. (*Id*. at 625)

In June, 2013, Ms. Clayton reported that the Prozac had been doing well for her, but she still lacked energy and had insomnia. (*Id*. at 636) At her request, Dr. Shah increased the dosage of Prozac. (*Id*. at 638)

During routine visits to Dr. Shah and Dr. Cazano for medication refills in September of 2013, and January of 2014, Ms. Clayton reported doing well on her current medication, denied depression, and had no new complaints. (*Id*. at 640-41, 647-49)

The ALJ considered the opinions of state agency physician Christal Janssen, Ph.D., and Melissa F. Jackson, Ph.D., who evaluated Ms. Clayton's mental residual functional capacity. Both found that Ms. Clayton's depression was not severe and caused mild limitations in concentration, persistence, and pace, and no limitations otherwise. (*Id*. at 100, 581-93, 619) The ALJ discounted these opinions because the record indicated Ms. Clayton continued to have symptoms of depression that required medication management. He found her to be moderately limited in concentration, persistence, and pace; and mildly limited in daily living activities and social functioning. (*Id*. at 100-01) There was sufficient evidence in the record for the ALJ to determine Ms. Clayton's mental residual functional capacity, and the record supports the ALJ's conclusion that Ms. Clayton was capable of unskilled work at SVP levels 1 and 2.

**The Hypothetical**

Ms. Clayton complains the ALJ erred by not including extreme obesity in his hypothetical to the vocational expert. (#11 at p. 15-17) Ms. Clayton, however, offers no

objective medical evidence to support a conclusion that she had limitations associated with her obesity. Although her treating physicians noted that she was obese and suggested she lose weight, none of the physicians imposed work-related restrictions because of her obesity. Further, at the hearing Ms. Clayton's attorney did not ask the vocational expert hypothetical questions that included obesity-related limitations. (*Id*. at 135) Accordingly, the ALJ's decision not to include obesity-related restrictions in his hypotheticals was supported by substantial evidence. See *Forte v. Barnhart*, 377 F.3d 892, 896–97 (8th Cir. 2004) (ALJ's failure to discuss obesity was not fatal where none of claimant's treating physicians imposed work-related limitations on the claimant because of his obesity).

**Conclusion**

Substantial evidence supports the ALJ's decision denying Ms. Clayton's applications for benefits. The ALJ made no legal error. For these reasons, Ms. Clayton's request for relief (#2) is DENIED, and the decision denying the applications for benefits is AFFIRMED.

DATED this 15th day of December, 2015.

_____
UNITED STATES MAGISTRATE JUDGE